THE MCHATTIE LAW FIRM, LLC
Christopher J. McHattie, Esq.
(Bar No. 035251987)
550 West Main Street
Boonton, New Jersey 07005
Telephone:  973-402-5505
Facsimile:  973-400-4110
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC HEALTH SYSTEM, INC.; PRACTICE ASSOCIATES MEDICAL GROUP, P.A. d/b/a ATLANTIC MEDICAL GROUP and AMG<br><br>          Plaintiffs<br><br>v.<br><br>ALLIANCE HEALTH SYSTEMS, LLC.; AMG ORTHOPEDICS d/b/a ALL BE HEALTHY LLC; NICHOLAS BUFANO; JOHN DOES 1-10 (name being fictitious for individuals whose identities are currently unknown); and ABC ENTITIES 1-10 (names being fictitious for corporate or other legal entities whose identities currently remain unknown),<br><br>          Defendants. | Civil Action No. not yet assigned<br><br><br>**COMPLAINT** |

Plaintiffs Atlantic Health System, Inc. ("AHS") and Practice Associates Medical Group, P.A. d/b/a ATLANTIC MEDICAL GROUP and AMG ("AMG") (collectively AHS and AMG "Plaintiffs"), by and through its counsel, hereby alleges as follows:

### THE PARTIES

1.      Plaintiffs Atlantic Health System, Inc. is a New Jersey non-profit corporation having an address at 475 South Street, Morristown, New Jersey 07960. AHS is in the business of, *inter alia*, medical services supplier serving the New York metropolitan area, with facilities in northern and central New Jersey.

1

2.      Plaintiffs Practice Associates Medical Group, P.A. d/b/a Atlantic Medical Group and AMG is a New Jersey professional association having an address at 1055 Hamburg Turnpike Ste 300, Wayne, NJ 07470. AMG is in the business of, *inter alia*, medical services supplier serving the New York metropolitan area, with facilities in northern and central New Jersey.

3.      Defendant Alliance Health Systems, LLC ("Alliance Health") is a New Jersey limited liability company having an address at 207 Commercial Court, Morganville, New Jersey 07751.

4.      Defendant All Be Healthy LLC, d/b/a AMG Orthopedics ("AMG ORTHO") is a New Jersey limited liability company having an address at 207 Commercial Court, Morganville, New Jersey 07751.

5.      Defendant Nicholas Bufano is an individual who acts as Chief Executive Officer of Alliance Health ("Mr. Bufano"). Upon information and belief, Mr. Bufano is New Jersey resident who resides at 39 Waterford Way, Lincroft, NJ 07738.

6.      Upon information and belief, Alliance Health, AMG ORTHO and Bufano are affiliated persons who own, are owned by or are under substantially common ownership and who act in active concert with each other (collectively "Defendants").

7.      Upon information and belief, Alliance Health, AMG ORTHO and Bufano, or one or the other, has caused and or directed the acts hereafter alleged.

8.      John Does 1-10, being fictitious names, are individuals whose true identities have not yet been discovered that have acted in active concert with Alliance Health, AMG Ortho and/or Mr. Bufano or otherwise participated in the wrongful acts against Plaintiffs that are set forth herein.

9.      ABC Entities 1-10, being fictitious names, are entities whose true identities have not yet been discovered that have acted in active concert with Alliance Health, AMG Ortho and/or Mr. Bufano or otherwise participated in the wrongful acts against Plaintiffs that are set forth herein. Collectively, Alliance Health, AMG ORTHO, Mr. Bufano, John Does 1-10 and ABC Entities 1-10 will be referred to as the "Defendants."

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Plaintiffs' related state and common law claims in proper pursuant to 28 U.S.C. §§ 1338 and 1367.

11.     This Court has personal jurisdiction over each of the Defendants because each regularly does business in the state of New Jersey and the causes of action hereinafter alleged arise out of their transaction of business in the state of New Jersey.

12.     Venue is properly situated in this District under 28 U.S.C. § 1391(b)-(c), and/or 28 U.S.C. § 1400(a). Specifically, Alliance Health is an entity in the state of New Jersey and a substantial portion of the events giving rise to the claims have occurred in the state of New Jersey.

## FACTS COMMON TO ALL CLAIMS

13.     AHS is a New Jersey not-for-profit entity which provides regional health care services including a broad range of adult, pediatric, orthopedic, obstetrical/gynecological, psychiatric, oncology, intensive care, cardiac care and newborn acute care services to patients from the counties of Morris, Essex, Passaic, Sussex, Bergen, Hunterdon, Union, Warren and Somerset in New Jersey, Pike County in Pennsylvania and southern Orange County in New York and a regional health trauma center that provides tri-state coverage and provides numerous outpatient ambulatory services, rehabilitation and skilled care and emergency care.

14.     Practice Associates Medical Group, a New Jersey not-for-profit entity doing business as Atlantic Medical Group, P.A. and AMG, is a captive physician practice serving all of AHS' divisions.

15.     AMG is a physician-governed group practice entity with more than 1,300 providers.

16.     AHS has a workforce of more than 18,000 team members and 4,800 affiliated physicians dedicated to building healthier communities.

17.     AHS serves more than half of the state of New Jersey including 14 counties and 5.5 million people.

18.     AHS is comprised of more than 500 sites of care, including eight hospitals: Morristown Medical Center in Morristown, Overlook Medical Center in Summit, Newton Medical Center in Newton, Chilton Medical Center in Pompton Plains, Hackettstown Medical Center in Hackettstown, Goryeb Children's Hospital in Morristown, Atlantic Rehabilitation Institute in Madison and through its partnership with CentraState Healthcare System and CentraState Medical Center in Freehold.

19.     AHS provides care for the full continuum of health care needs through 23 urgent care centers, Atlantic Visiting Nurse and Atlantic Anywhere Virtual Visits. Facilitating the connection between these services on both land and air is the transportation fleet of Atlantic Mobile

Health. AHS is the official health care partner of the New York Jets. Atlantic Health System has a medical school affiliation with the Sidney Kimmel Medical College at Thomas Jefferson University and is a member of AllSpire Health Partners.

20.     In 2006, Atlantic Health System formed Practice Associates Medical Group (PAMG) to support their aligned physician practices.

21.     In 2014, Plaintiff Practice Associates Medical Group formally filed a fictitious name filing for "Atlantic Medical Group."

22.     Shortly thereafter, Atlantic Medical Group was being called AMG by physicians and patients, and other industry and marketplace participants.

23.     AMG includes primary care physicians as well as numerous specialists, from orthopedics to rheumatology to sports medicine, including a full and complete range of orthopedic care, from trainers and physical therapists to team and player doctors for the NY Jets®.

24.     AMG boasts cutting-edge research and ground-breaking results. All AMG physicians are also part of the Atlantic Accountable Care Organization, one of the largest ACOs in the nation, which is working to reduce the growth of health care costs, improve quality and better coordinate care.

25.     AMG's Atlantic Orthopedic Institute is nationally-recognized for its multidisciplinary treatments that span pre-surgical education through post-operative rehabilitation.

26.     Morristown Medical Center was ranked by U.S. News & World Report as one of the 30 best hospitals in the nation for orthopedics. AMG doctors and AMG perform more than 4,000 joint replacements each year and are industry leaders in minimal invasive incision surgery and gender-specific knee technology.

27.     AHS' Morristown Medical Center, and its AMG orthopods, are one of only four hospitals in New Jersey designated a Level 1 Regional Trauma Center by the American College of Surgeons. Morristown Medical Center, and its AMG orthopods, are equipped to treat the most serious orthopedic injuries.

28.     From 2013 through 2021, AHS and AMG expended significant time, money and resources on branding the ATLANTIC HEALTH SYSTEM®, ATLANTIC HEALTH®, ATLANTIC®, ATLANTIC MEDICAL GROUP®, AHS™ and AMG™ (collectively "Plaintiffs' Trademarks") brand services and the trademarks associated with those services (collectively "Plaintiffs' Services").

4

29.     Plaintiffs' Services and Plaintiffs' Trademarks are geographically diverse and well known across fourteen central and northern counties in New Jersey.

30.     There are numerous examples from patients, consumers, competitors, and internal team members referencing AMG when referring to us. There are certain platforms such as our electronic medical record, Epic, that also have character limits in various areas so it's very common for our physicians and practices to reference themselves or their practice using the AMG abbreviation in Epic, which interfaces with all Epic users from across the world.

### Sales/Revenue

31.     Plaintiffs' revenues for 2020 were $3,069,163,000 and served over 5.5 million unique patients.

32.     In the 2021 calendar year, AMG had annual net revenues in excess of $400 million.

33.     In the 2021, calendar year, AMG had over 1.37 million patient visits.

34.     AMG was listed in 2018 Crain's New York Metro Area's Largest Physician Group listings.

35.     Plaintiffs are well known entities in the relevant marketplace.

### Plaintiffs' Advertising Efforts and Expenditures Leading to Buyer Association

36.     Plaintiff has spent a substantial amount of money on marketing and advertising, specifically on AMG.

37.     In 2022, Plaintiff will spend an estimated amount of $3,140,000 on marketing and advertising just for AMG which included but is not limited to: commercials, billboards, magazines/newspapers, AMG directories, patient mailings, Healthgrades, Webmd, promotional items, signage, direct mail, open houses, social media and sponsorships.

38.     Specifically, AMG signed a media buy for September 12-mid November for $250,000 and is spending about $350,000 just for AMG on digital advertising including social media.

39.     In 2021, AMG spent an estimated amount of $2,520,800 on marketing and advertising which included but is not limited to: commercials, billboards, magazines/newspapers, AMG directories, patient mailings, Healthgrades, Webmd, promotional items, signage, direct mail, open houses, social media and sponsorships.

40.     In 2020, Plaintiff AMG spent an estimated amount of $1,980,800 on marketing and advertising which included but is not limited to: commercials, billboards, magazines/newspapers,

AMG directories, patient mailings, Healthgrades, Webmd, promotional items, signage, direct mail, open houses, social media and sponsorships.

41.     In 2019, Plaintiff AMG spent an estimated amount of $1,800,000 on marketing and advertising which included but is not limited to: commercials, billboards, magazines/newspapers, AMG directories, patient mailings, Healthgrades, Webmd, promotional items, signage, direct mail, open houses, social media and sponsorships.

42.     In 2018, Plaintiff AMG spent an estimated amount of $1,200,000 on marketing which included but is not limited to: commercials, billboards, magazines/newspapers, AMG directories, patient mailings, Healthgrades, Webmd, promotional items, signage, direct mail, open houses, social media and sponsorships.

43.     The budget for AMG is separate from the larger AHS marketing yearly spend, which estimates around $25 million.

### Plaintiffs' Rights in Trademarks

44.     At least as early as May of 1986 AHS began using the trademark ATLANTIC HEALTH SYSTEM, which is now protected by, *inter alia*, Incontestable United States Trademark Registration. No. 2,793,357, for use in connection with: health care cost review, health care utilization and review services, and promoting the hospital, medical, surgical, health care, physical therapy, psychological treatment, physical rehabilitation, medical research, and medical consulting services of others and procuring healthcare services for others by contracting with healthcare providers; and health care in the nature of hospital, medical, surgical, health care, physical therapy, psychological treatment, physical rehabilitation and medical research.

45.     At least as early as January of 2015, AHS began using the trademark ATLANTIC MEDICAL GROUP, which is now protected by, *inter alia*, Incontestable Registration No. 4,744,864, for use in connection with "Health care; medical services; medical services in the field of internal medicine, oncology, nephrology, endocrinology, pediatric medicine, obstetrics and gynecology, gastroenterology, cardiology, orthopedic surgery, pulmonology and hematology; pediatric health care services; pediatric oncology services."

46.     AHS and AMG have filed and federally registered over 57 trademarks with the United States Patent and Trademark Office ("USPTO"); has 5 pending trademark applications (including directed to the AMG trademarks as noted below) and has numerous other common law trademarks which it uses to distinguish its medical and healthcare services, by way of a general

description, from those of others.

47. AMG has filed applications to register the AMG trademark which are embodied in the following United States Patent and Trademark Office Application Serial Nos.:

a. in International Class 42, Serial No. 97577071, is directed to: Medical laboratory services; Medical research; Providing medical and scientific research information in the field of pharmaceuticals and clinical trials.

b. in International Class 44, Serial No. 97576589, is directed to: Ambulant medical care; Consulting services in the fields of health and nutrition; Counseling services in the fields of health, nutrition and lifestyle wellness; Dermatology services; Dietary and nutritional guidance; Drug use testing services; Emergency medical assistance; Fitting of orthopedic devices; Fitting of prosthetics; Gynecology services; Health care; Hospitals; Medical services; Medical testing for diagnostic or treatment purposes; Nursing services; Physical rehabilitation; Physical therapy; Physician services; Providing a web site featuring information on health and nutrition; Providing a web site featuring medical information; Psychiatric services; Rehabilitation patient care services; Surgery.

c. in International Class 16, Serial No. 97582840, is directed to: Educational publications, namely, pamphlets, brochures, leaflets and periodicals in the fields of medical services, healthcare, nutrition, sports training, pain management, preventive medicine and alternative medical care procedures; Research reports featuring findings related to healthcare and medical services.

d. in International Class 35, Serial No. 97579834, is directed to: Medical referrals; Physician referrals; Promoting collaboration within the scientific, research and medical communities to achieve advances in the field of healthcare; Promoting public awareness of healthcare and preventive medicine concerns; Providing advertising, marketing and promotional services for the pharmaceutical and medical industry; Providing an on-line directory information service featuring information regarding medical services and medical specialist services providers; Providing assistance, fitness evaluation and consultation to corporate clients to help their employees make health, wellness and nutritional changes in their daily living to increase productivity and lower health care costs; Providing consumer

information in the field of healthcare; Retail pharmacy services

e. in International Class 41, Serial No. 97579929,is directed to: Educational services, namely, providing classes and seminars in the fields of medicine, preventive medicine, rehabilitation, sports-related medical concerns, nutrition and health and wellness; Entertainment services, namely, contest and incentive award programs designed to reward program participants who exercise, make healthy eating choices, and engage in other health-promoting activities; Health club services, namely, providing instruction and equipment in the field of physical exercise; Medical training and teaching; On-line publication of health magazines and newsletters; Organization of seminars, working groups, research groups and conventions, in the field of medicine; Providing continuing medical education courses; Providing continuing nursing education courses; Providing on-line newsletters in the field of health, wellness, medical issues, exercise and fitness.

48. Plaintiff Atlantic Health System also owns the following United States Trademark Registrations:

a. ATLANTIC HEALTH, Registration No. 3914108, for use in connection with "Educational publications, namely, pamphlets, brochures, leaflets and periodicals in the fields of medical services, healthcare, nutrition, sports training, pain management, preventive medicine and alternative medical care procedures; Research reports featuring findings related to healthcare and medical services;"

b. ATLANTIC HEALTH, Registration No. 3914109, for use in connection with "Medical referrals; Physician referrals; Promoting collaboration within the scientific, research and medical communities to achieve advances in the field of healthcare; Promoting public awareness of healthcare and preventive medicine concerns; Providing advertising, marketing and promotional services for the pharmaceutical and medical industry; Providing an on-line directory information service featuring information regarding medical services and medical specialist services providers; Providing assistance, fitness evaluation and consultation to corporate clients to help their employees make health, wellness and nutritional changes in their daily living to increase productivity and lower health care costs; Providing consumer information in the field of healthcare; Retail pharmacy

8

services;"

c.  ATLANTIC HEALTH, Registration No. 3914111, for use in connection with "Medical laboratory services; Medical research; Providing medical and scientific research information in the field of pharmaceuticals and clinical trials;"

d.  ATLANTIC HEALTH, Registration No. 3914112, for use in connection with "Ambulant medical care; Consulting services in the fields of health and nutrition; Counseling services in the fields of health, nutrition and lifestyle wellness; Dermatology services; Dietary and nutritional guidance; Drug use testing services; Emergency medical assistance; Fitting of orthopedic devices; Fitting of prosthetics; Gynecology services; Health care; Hospitals; Medical services; Medical testing for diagnostic or treatment purposes; Nursing services; Physical rehabilitation; Physical therapy; Physician services; Providing a web site featuring information on health and nutrition; Providing a web site featuring medical information; Psychiatric services; Rehabilitation patient care services; Surgery;"

e.  ATLANTIC HEALTH, Registration No. 3914110, for use in connection with "Educational services, namely, providing classes and seminars in the fields of medicine, preventive medicine, rehabilitation, sports-related medical concerns, nutrition and health and wellness; Entertainment services, namely, contest and incentive award programs designed to reward program participants who exercise, make healthy eating choices, and engage in other health-promoting activities; Health club services, namely, providing instruction and equipment in the field of physical exercise; Medical training and teaching; On-line publication of health magazines and newsletters; Organization of seminars, working groups, research groups and conventions, in the field of medicine; Providing continuing medical education courses; Providing continuing nursing education courses; Providing on-line newsletters in the field of health, wellness, medical issues, exercise and fitness;"

f.  ATLANTIC, Registration No. 5803007, for use in connection with "Medical training and teaching by medical professionals, namely, medical doctors, nurses and emergency medical technicians;"

g.  ATLANTIC, Registration No. 5760192, for use in connection with "Ambulance

and helicopter transport in the field of health and medicine; Consulting services in the field of air medical operations in the nature of air medical transport; Medical transport services;" and

h.   ATLANTIC, Registration No. 5495065, for use in connection with "24-hour response center which provides medical information to emergency medical personnel and allows members to update their medical/personal files; Emergency medical services; Emergency medical services offered in or from a remote, mobile or temporary on-site location; Emergency medical services provided on an aircraft; Emergency medical response services."

49.   Defendants were placed on written notice of Plaintiffs' Trademarks in August of 2022. Notwithstanding the foregoing, Defendant have continued to use Plaintiffs' Trademarks and confusingly similar marks and trade dress in commerce.

50.   Plaintiffs and Defendants compete in the same market to provide medical and healthcare services to the public.

## Defendants' Pattern of Trademark Infringement

51.   Defendants use the name and trademark Alliance Health Systems.

52.   Defendants use the name and trademark AHS.

53.   Defendants use the name and trademark AMG.

54.   Defendant Bufano has used the name and trademark **Atlantic** Spine Center.

55.   Upon information and belief, Defendants did not own or operate the www.alliancehealthsystem.com domain until August 28, 2015.

56.   Upon information and belief, Defendants filed for an associated name for the entity All Be Healthy, LLC in New Jersey on February 1, 2022 for use of the name AMG Orthopedics.

57.   Upon information and belief, Defendants began using the AMG trademark, and infringing Plaintiffs' rights in its marks, on or about May 14, 2022, when it opened its Fair Lawn location and offered their services under the AMG name and mark.

## Infringing Uses

58.   Defendants have infringed Plaintiffs' common law AMG mark in several

10

instances since at least as early as October 2021.

59. Defendants have launched the domain www.amgortho.com.

60. Defendants are advertising the AMG mark on electronic billboards, specifically, on Route 78 West of the Garden State Parkway, on NJ Turnpike South and on Route 80 in New Jersey.

61. Defendants are continuously infringing Plaintiffs' Trademarks by postings on their Facebook and Instagram pages.



62.     The internet is a significant source of health care information for consumers with a large percentage of all health inquiries starting at Google®.

63.     When AMG patients or stakeholders search for one of its many established AMG practices, specifically orthopedics, they frequently search "AMG Orthopedics". A Google Search in central or northern New Jersey, and potentially elsewhere, you would see results Defendants' AMG Orthopedics.



64.     Defendants have also used the following infringing ads online:

a.    In North Jersey Chamber, a directory of businesses in the Northern New Jersey Area, Defendants are using AMG to advertise their services.



b.  On Healthgrades.com, an online healthcare directory, Defendants are listed using the AMG mark.



c.  Physicians working at Defendant AMG Orthopedics display the AMG mark on their professional profiles, such as LinkedIn.



    d.   Physicians working at Defendant AMG Orthopedics display the AMG mark on their marketing flyers.



# DR. MARK HARRINGTON, DO, ATC

A board-certified sports medicine physician specializing in non-operative prevention and treatment of orthopedic injuries.

Mark Harrington, DO, ATC is a specialist in sports medicine and non-operative orthopedics at AMG Orthopedics. He is board-certified in family medicine with a certificate of added qualifications in sports medicine. For three years, Dr. Harrington served as a team physician for the Cleveland Browns.

Dr. Harrington's special interests encompass all aspects of sports medicine including injury prevention and rehabilitation, acute and chronic injuries, sports-related concussion, and sports physicals. Additional interests include musculoskeletal ultrasound-guided procedures and diagnostics, as well as the use of orthobiologics to improve the healing of fractures, injured muscles, tendons and ligaments.

Prior to attending medical school, Dr. Harrington earned a bachelor's degree in athletic training and practiced as a high school and collegiate athletic trainer. He went on to earn his Doctor of Osteopathic Medicine degree at A.T. Still – Kirksville College of Osteopathic Medicine in Missouri and completed his Family Medicine Residency at Morristown Medical Center in New Jersey, where he served as Chief Resident. Dr. Harrington completed his Sports Medicine Fellowship at University Hospitals in Cleveland, Ohio.

## DR. HARRINGTON'S AREAS OF EXPERTISE INCLUDE:



- Clinical Orthopedics
- Athletic Injury
- Non-Operative Fracture Management
- Non-Operative Management of Sports Injuries
- Sports Concussions
- Ultrasound-Guided Musculoskeletal Injections
- Ultrasound-Guided Percutaneous Tenotomy



 SAME DAY ORTHOPEDICS X-RAYS & MRI REVIEW   201-509-8600 | AMGORTHO.COM

65.     Defendants are prolific and repeat infringers, even copying the Mercedes logo to create Defendants' AMG Orthopedics logos:

17

 

## COUNT I
### Infringement of Federally Registered Trademarks and Service Marks
### 15 U.S.C. § 1114(1)(a)

66.     Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

67.     Plaintiffs have used its federally registered Plaintiffs' Trademarks name and mark in commerce in connection with all of its services.

68.     Plaintiffs have used AHS and AMG continuously, extensively and substantially in connection with Plaintiffs' Services.

69.     Defendants had knowledge of Plaintiffs' Services.

70.     Defendants had knowledge of Plaintiffs' Trademarks.

71.     Specifically, upon information and belief, Mr. Bufano as a member of and Alliance Health's, has knowingly and substantially participated in Alliance Health's and AMG Ortho's act of infringement.

72.     Defendants adopted and continue to use marks confusingly similar to Plaintiffs' trademarks.

73.     Defendants adopted and continue to use marks confusingly similar to Plaintiffs' trademarks with full knowledge of Plaintiffs' superior rights, and with full knowledge that their

infringing use of Plaintiffs' Trademarks and name was intended to cause confusion, mistake and/or deception.

74.     Defendants offers their goods and services under the Infringing Mark in the same channels of trade as those in which Plaintiffs' legitimate goods and services are offered.

75.     Defendants' infringing use of Plaintiffs' Trademarks and name or any colorable imitation thereof is likely to cause confusion, mistake, or deception as to the origin, sponsorship, the affiliation, connection, association, or approval of the services with Plaintiffs, in violation of Section 32(1) of the Lanham Act 15 U.S.C. § 1114.

76.     The aforesaid infringement by Defendants was committed willfully, knowingly and in conscious disregard of Plaintiffs' rights.

77.     The aforesaid infringement by Defendants has caused, and unless restrained by the Court will continue to cause immediate and irreparable injury to Plaintiffs and Plaintiffs' business.

78.     Defendants' actions constitute knowing, deliberate, and willful infringement of Plaintiffs' federally registered mark. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

79.     Plaintiffs have no adequate remedy at law.

80.     Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs. Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT II
**Federal Unfair Competition and False Designation of Origin 15 U.S.C. § 1125(a)**

81.     Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

82.     As a result of Plaintiffs' widespread and long-standing use of Plaintiffs' Trademarks, including but not limited to the AHS and AMG trademarks, Plaintiffs have acquired the exclusive rights to Plaintiffs' Trademarks and those trademarks have achieved substantial goodwill, recognition, and reputation.

83.     Defendants' conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection or association of Defendants and their services with Plaintiffs, and as to the origin, sponsorship or approval of Defendants and their products and services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

84.     Defendants have made false representations, false descriptions, and false designations of, on, or in connection with its goods in violation of 15 U.S.C. § 1125(a). Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to adidas's goodwill and reputation as symbolized by Plaintiffs' Trademarks, for which have no adequate remedy at law.

85.     Defendants had direct and full knowledge of Plaintiffs' prior use of and rights in its marks before the acts complained of herein.

86.     Defendants' knowing, intentional, and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

87.     Defendants' unauthorized conduct has also deprived and will continue to deprive Plaintiffs of the ability to control the consumer perception of its products and services offered

under Plaintiffs' Trademarks and name, placing the valuable reputation and goodwill of Plaintiffs in the hands of Defendant.

88.     As a result of Defendants' aforesaid conduct, Plaintiffs have suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Plaintiffs in its Mark and name. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiffs have no adequate remedy at law. Plaintiffs will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

89.     Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs. Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT III
### Declaratory Relief Pursuant to 28 U.S.C. § 2201, *et seq.* (Declaratory Judgment Act)

90.     Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

91.     Plaintiffs are entitled to and requests a Declaration of its ownership of the Plaintiffs' Trademarks, including but not limited to the AHS and AMG trademarks.

92.     There is a real and actual controversy between Plaintiffs and Defendants regarding the foregoing.

93.     Such controversy has impacted Plaintiffs' brand services and trademarks as Defendants have deliberately capitalized on the goodwill associated with Plaintiffs' brand services and trademarks.

94.     The controversy between Plaintiffs and Defendants is thus real and substantial and demands specific relief through a decree of a conclusive character.

21

95.     Accordingly, Plaintiffs are entitled to declaratory judgment that it owns Plaintiffs' Trademarks, including but not limited to the AHS and AMG trademarks.

## COUNT IV
### Trademark Infringement and Unfair Competition under New Jersey Common Law

96.     Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

97.     Plaintiffs have invested substantial time, labor, skill, and money in the development of Plaintiffs' Trademarks.

98.     Through its conduct described above, including the unauthorized use of Plaintiffs' Trademarks and making false or misleading representations of fact in connection with the sale and offering for sale of Defendants' goods and services confusingly similar to Plaintiffs', Defendants has passed off their products or services as those of Plaintiffs or being in connection or affiliation with Plaintiffs, and has intentionally misappropriated their products and services.

99.     Plaintiffs' labors, investments, and expenditures and intentionally exploited Plaintiffs' Trademarks and Plaintiffs' reputation and goodwill associated therewith.

100.    Defendants' conduct is intended and likely to cause confusion, deception, or mistake among consumers as to the source, origin, sponsorship, affiliation, or approval of Defendants' goods and services by Plaintiffs.

101.    Defendants have used marks and trade dress that are confusingly similar to Plaintiffs, in relation to identical or highly similar goods as Plaintiffs' and in competition with Plaintiffs, all of which provided and continues to provide Defendants an unfair advantage, because Defendants bore little or no burden of the expense of development and promotion of those goods.

102.    Defendants' conduct was undertaken in bad faith, with full knowledge of Plaintiffs' ownership of and/or exclusive right to use and license Plaintiffs' Trademarks.

103.   By knowingly competing against Plaintiffs using confusingly similar marks for identical or highly similar goods and services, Defendants have misappropriated a commercial advantage belonging to Plaintiffs.

104.   Defendants' conduct is illegal and actionable under the common laws of the State of New Jersey.

105.   Defendants' actions described above constitute unfair competition in violation of New Jersey common law.

106.   Defendants' conduct as described above has been intentional, willful, deliberate, malicious, and intended to injure Plaintiffs, in clear disregard of Plaintiffs' legal rights.

107.   Plaintiffs have no adequate remedy at law inasmuch as money damages alone would not adequately compensate Plaintiffs for the harm to its rights, goodwill, and business reputation.

108.   Defendants' acts described above greatly and irreparably damage Plaintiffs and will continue to damage Plaintiffs unless enjoined by this Court.

<u>**COUNT V**</u>
**False Advertising in Violation of N.J.S.A. § 56:8-2 et seq**

109.   Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

110.   Defendants' services provided in the medical and healthcare field are services to consumers that are covered under the NJ Consumer Fraud Act.

111.   Defendants' have engaged in trade or commerce in this State by advertising, offering for sale, and selling medical and healthcare services in New Jersey.

112.   Through its above-described conduct of falsely or misleadingly advertising of "AHS" and "AMG" Defendants have used unconscionable commercial practices, deception, fraud,

and misrepresentation concerning the nature of its affiliation, connection, representation or sponsorship with Plaintiffs with the intent that consumers reply on such fraud, deception, and misrepresentation.

113.    Defendants' false advertising is likely to cause confusion, mistake, or deception as to the source or origin of the services and/or authorization or sponsorship by Plaintiffs and, as such, has diverted sales from Plaintiffs.

114.    Defendants' conduct has caused, and is continuing to cause, irreparable injury to Plaintiffs, including to its reputation and goodwill, and Plaintiffs have no adequate remedy at law.

115.    Defendants' conduct has caused, and is continuing to cause, ascertainable loss by misleading patients and other caregivers to mistake Defendants' services for Plaintiffs' services, which services are of a different quality than Plaintiffs'.

116.    Unless such unauthorized use is enjoined, Plaintiffs will continue to be irreparably harmed.

117.    Defendants' conduct, as described above, has been willful, wanton, reckless, and in total disregard to Plaintiffs' rights.

118.    By reason of Defendants' misconduct, Plaintiffs have suffered, and will continue to suffer, monetary damages and loss of goodwill.

**COUNT VI**
**Injury To Business Reputation and Dilution Under State Law**

119.    Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

120.    Plaintiffs' AHS and AMG common law Trademarks have inherent and acquired distinctiveness in New Jersey.

121.    Plaintiffs' AHS and AMG common law Trademarks have been in long and exclusive use by Plaintiffs in New Jersey.

122.    Plaintiffs' AHS and AMG common law Trademarks have been broadly and extensively advertised in New Jersey.

123.    Plaintiffs' AHS and AMG common law Trademarks are used in the same channels of trade as Defendants' infringing trademarks in New Jersey.

124.    Plaintiffs' AHS and AMG common law Trademarks are widely and consistently recognized in the parties' overlapping trading areas and channels of trade in New Jersey.

125.    Defendants' acts are likely to injure Plaintiffs' business reputation.

126.    Defendants' acts are likely to dilute the distinctive quality of its Plaintiffs' Trademarks and Services in violation of N.J.S.A. §56:3-13.20.

127.    Defendants' aforesaid conduct has caused, and unless restrained by this Court, will continue to cause Plaintiffs monetary damages in an amount to be determined at trial.

128.    In addition, Defendants' aforesaid conduct has caused, and unless restrained by this Court, will continue to cause Plaintiffs immediate and irreparable injury, for which Plaintiffs have no adequate remedy at law.

<u>**COUNT VII**</u>
**Tortious Interference with Prospective Economic Advantage**

129.    Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

130.    Through its trademark infringement, false advertising, counterfeiting, passing off, reverse passing off, and other unfair competition, all as described above, Defendants have intentionally and improperly interfered with Plaintiffs' prospective sales of replacement salt cells to consumers in New Jersey and elsewhere.

25

131.    By deceiving customers into believing false or misleading claims that suggest certification, authorization, or sponsorship by Plaintiffs, Defendants have improperly diverted sales and revenue from Plaintiffs and have prevented Plaintiffs from providing its services to its customers.

132.    But for Defendants' wrongful conduct, Plaintiffs' likely would have made the revenue that Defendants actually made.

133.    Defendants' conduct has caused, and is continuing to cause, irreparable injury to Plaintiffs, including to its reputation and goodwill, and Plaintiffs have no adequate remedy at law. Unless such unauthorized use is enjoined, Plaintiffs will continue to be irreparably harmed.

134.    Defendants' conduct, as described above, has been willful, wanton, reckless, and in total disregard to Plaintiffs' rights.

135.    By reason of Defendants' misconduct, Plaintiffs have suffered, and will continue to suffer, monetary damages and loss of goodwill.

**COUNT VIII**
**Unjust Enrichment – Trading Off**

136.    Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

137.    As detailed above, Plaintiffs expended considerable time and resources in creating, developing and maintaining the Plaintiffs' Trademarks. This undertaking required considerable research, time, strategic planning, and evaluation of market and economic trends, new technologies, innovations and their impact on the healthcare and medical industries.

138.    By virtue of its significant efforts and labor, embodied in the Plaintiffs' Trademarks conferred a benefit on Defendants, whereby Defendants took its own services and used the Plaintiffs' Trademarks without authorization.

139.    But for the benefit of the Plaintiffs' Trademarks, Defendants would have had to expend considerable time and expense in independent research, development, marketing and advertising of its healthcare services in order to enter the relevant market and directly compete with Plaintiffs.

140.    Defendants have been unjustly enriched by retaining this benefit without providing Plaintiffs any payment. As a result of Defendants' wrongful acts, Plaintiffs have suffered and will continue to suffer significant commercial, monetary and other damages.

## COUNT IX
## Cybersquatting
## 15 U.S.C. 1125(d)

141.    Plaintiffs reallege and incorporate each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

142.    Upon information and belief, Defendants have a bad faith intent to profit from the registration and use of the Internet domain names: https://amgortho.com/ (the "Domain") by creating an association with Plaintiffs' trademarks as to source or sponsorship.

143.    The Foregoing Domain is confusingly similar to, and dilute the distinctive quality of, Plaintiffs' trademarks.

144.    Plaintiffs have been damaged by Defendants' unlawful use of the Domain and will suffer irreparable harm if use by Defendants continues.

145.    Defendants' acts, as aforesaid, are in violation of the Anti-cybersquatting Consumer Protection Act under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court:

A.     Enter Judgment in favor of Plaintiffs on all the foregoing Counts of this Complaint;

B.     Enter Judgment Declaring Plaintiffs the respective owners of all right, title and interest in and to the Plaintiffs' Trademarks, and the common law marks AHS and AMG;

C.     Enter Judgment against Defendants for infringement of Plaintiffs' Trademarks and grant Plaintiffs preliminary and permanent injunctive relief, together with damages, pursuant to 15 U.S.C. §1051 et. seq., consisting of Defendants' profits, any damages sustained by Plaintiffs and the cost of the action, said amount to be trebled, that the Court award Plaintiffs their attorney's fees, that the Court in the alternative award damages in such amount as the Court in its discretion shall find to be just ;

D.     Enter Judgment against Defendants and in favor of Plaintiffs for violations of N.J.S.A. §§ 56:8-2 and 56:3-13.20;

E.     Enter Judgment against Defendants and in favor of Plaintiffs for unjust enrichment;

F.     Enter Judgment against Defendants and in favor of Plaintiffs for tortious interference;

G.     Enter Judgment, permanently enjoining Defendants their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from using Plaintiffs' Trademarks, colorable imitations of Plaintiffs' Trademarks or marks likely to cause confusion with Plaintiffs' Trademarks;

H.      Plaintiffs be awarded all monetary losses suffered by Plaintiffs or caused by Defendants, the exact sum to be proven at the time of trial;

I.      Plaintiffs be awarded all profits of Defendants from use of Plaintiffs' Trademarks and other wrongful acts of Defendants;

J.      Awarding Plaintiffs reasonable attorneys' fees, costs and disbursements, as provided in, *inter alia*, the Lanham Act 15 U.S.C. §§ 1125(a), 1116, and 1117 et seq. and N.J.S.A. § 56:8-19;

K.      Awarding Plaintiffs statutory, enhanced and treble damages as provided in such applicable law and regulations, including reasonable attorneys' fees, costs and disbursements, as provided in, *inter alia*, the Lanham Act 15 U.S.C. §§ 1125(a), 1116, and 1117 et seq. and N.J.S.A. §§ § 56:8-2 and 56:8-19; and

L.      Enter such other and further relief to which Plaintiffs may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

THE MCHATTIE LAW FIRM

By: */s/ Christopher J. McHattie*
    Christopher J. McHattie, Esq.
550 West Main Street
Boonton, NJ 07005
(973) 402-5505
cmchattie@mchattielaw.com

Dated: September 22, 2022    *Attorneys for Plaintiffs*