THE MCHATTIE LAW FIRM, LLC
Christopher J. McHattie, Esq.
(Bar No. 035251987)
550 West Main Street
Boonton, New Jersey 07005
Telephone:  973-402-5505
Facsimile:  973-400-4110
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLANTIC HEALTH SYSTEM®, INC.; PRACTICE ASSOCIATES MEDICAL GROUP, P.A. d/b/a ATLANTIC MEDICAL GROUP® and AMG | Civil Action No. not yet assigned |
| Plaintiffs | |
| v. | **ORAL ARGUMENT REQUESTED** |
| ALLIANCE HEALTH SYSTEMS, LLC.; AMG ORTHOPEDICS d/b/a ALL BE HEALTHY LLC; NICHOLAS BUFANO; JOHN DOES 1-10 (name being fictitious for individuals whose identities are currently unknown); and ABC ENTITIES 1-10 (names being fictitious for corporate or other legal entities whose identities currently remain unknown), | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**APPLICATION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**I.**    **PRELIMINARY STATEMENT** ...................................................................1

**II.**   **STATEMENT OF FACTS** ....................................................................2

**III.**  **ARGUMENT** .........................................................................15

**IV.**   **LEGAL STANDARD FOR INJUNCTIVE RELIEF.** ...........................15

**V.**    **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR TRADEMARK INFRINGEMENT CLAIMS BECAUSE PLAINTIFFS HAVE VALID AND LEGALLY PROTECTABLE FEDERAL AND COMMON LAW TRADEMARKS, PLAINTIFFS OWN THE TRADEMARKS AND THE DEFENDANTS' USE OF THE TRADEMARKS IS LIKELY TO CREATE CONFUSION CONCERNING THE ORIGIN OF THE GOODS AND SERVICES.** ..................................................................18

      **1.**  Plaintiffs' Marks are valid and are legally protectable. ........................... 19

      **2.**  Plaintiffs own the ATLANTIC HEALTH SYSTEM®, AHS™, ATLANTIC MEDICAL GROUP® and AMG™ marks. .......................... 24

      **3.**  Defendants' use of AHS and AMG is likely to cause confusion with Plaintiffs' Marks. ....................................................................... 24

**VI.**   **PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF A PRELIMINARY INJUNCTION IS NOT GRANTED BECAUSE DEFENDANTS CONTINUED USE AND THREATS OF FUTURE INFRINGEMENT ARE MORE THAN MERE CONCLUSORY ALLEGATIONS.** ..............................................26

**VII.**  **THE BALANCE OF HARDSHIP WEIGHS IN FAVOR OF GRANTING AN INJUNCTION AT THIS TIME BECAUSE DEFENDANTS ARE MERELY BEING ASKED TO COMPLY WITH THE LANHAM ACT.** ...........................29

**VIII.** **THE PUBLIC INTEREST WILL BE SERVED BY GRANTING THE PRELIMINARY INJUNCTION AND PROTECTING PLAINTIFFS' TRADEMARKS.** ..............................................................30

**IX.**   **DEFENDANT NICHOLAS BUFANO IS PERSONALLY RESPONSIBLE FOR HAVING INFRINGED PLAINTIFFS' MARKS.** ....................................30

**X.**    **CONCLUSION** ...............................................................31

# TABLE OF AUTHORITIES

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) . 18, 25

*Adams v. Freedom Forge Corp.*, 204 F.3d 475, 486 (3d Cir. 2000) ............................................ 18

*Advance Magazine Publishers Inc. v. Vogue Int'l*, 123 F. Supp. 2d 790, 802 (D.N.J. 2000) ....... 30

*Am. Ex. Travel Related Servs., Inc. a Sidamon Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012) ......... 18

*American Steel Foundries v. Robertson*, 269 U.S. 372, 380, 46 S. Ct. 160 (1926) ...................... 17

*Banjo Buddies, Inc. v Renosky*, 399 F 3d 168, 175 (3d Cir 2005) ................................................. 30

*Broad. Music, Inc. v. Amici III, Inc.*, 14-CV-5002, 2014 WL 7271915, at *2 (D.N.J. Dec. 16, 2014)

............................................................................................................................................... 29

*Buzz Bee Toys, Inc. v. Swimways Corp.*, 20 F. Supp. 3d 483, 510 (D.N.J. 2014) ....................... 29

*Caesar's World, Inc. v. Caesar's Palace*, 490 F. Supp. 818, 822 (D.N.J. 1980) ......................... 21

*Chanel, Inc. v. Matos*, civ. No. 14-3509, 2015 WL 4773072, at *10 n.6 (D.N.J. Aug. 13, 2015) 18

*Christian Science Bd. of Directors of First Church of Christ, Scientist v. Evans*, 105 N.J. 297, 520

A.2d 1347, 2 U.S.P.Q.2d 1093, 1095 (1987) ................................................................. 17

*Cola Co.*, 44 F. Supp. 405, 410 (E.D.Pa., 1942) ......................................................................... 16

*Crowe v. Degioia*, 90 N.J. 126, 132-134, 447 A.2d 173, 176 (1982) .......................................... 16

*Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) ................................................ 31

*Electronic Laboratory Supply Co. v. Cullen*, 977 F.2d 798, 807-808 (3d Cir. 1992) ................. 31

*Fisons Horticulture, Inc., Appellant in No. 93-7224, v. Vigoro Industries, Inc.*, Appellant in No.

93-7287, 30 F.3.3d, 466, 476 (3d Cir. 1994) ......................................................................... 25

*Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991) ........... 19, 21, 24

*Holiday Inns, Inc. v. Trump*, 617 F. Supp. 1443, 1464 (D.N.J. 1985) ......................................... 19

*Hydro-Dynamics, Inc. v. George Putnam Co., Inc.*, 811 F.2d 1470, 1473 (Fed.Cir. 1987)......... 21

*Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3rd Cir. 1983)................................................ 25

*Kohler Mfg. v. Beeshore*, 59 F. 572, 576 (3d Cir. 1893) ............................................................ 21

*Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) ............................ 16, 28, 26

*Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 229 (D.N.J. 2009) ............................ 26

*Nichino Am., Inc. v. Valent U.S.A., LLC*, No. 21-1850 (3d Cir. Aug. 12, 2022).................. 16, 17

*Nike, Inc. v. Eastern Ports Custom Brokers, Inc.*, 2:11-cv-4390-CCC-MF, 2018 WL 3472628, at
   *4 (D.N.J. 19 July 2018)........................................................................................................ 25

*Opticians Ass'n*, 920 F.2d at 197 ............................................................................................... 30

*Parks, LLC v. Tyson Foods, Inc.*, 186 F. Supp. 3d 405, 410 (2016) ........................................... 19

*Pedi-Care, Inc. v. Pedi-A-Care Nursing Inc.*, 656 F. Supp. 449, 453 (D.N.J. 1987) .................. 18

*Silvertop Associates, Inc.*, 319 F. Supp. 3d at 769........................................................................ 29

*Tally-Ho, Inc. v. Coast Community College District*, 889 F.2d 1018, 1022-23 (11th Cir. 1989)  20

*TD Bank, N.A. v. Hill*, 2015 WL 4523570, at *22 (D.N.J. Jul. 27, 2015) .................................. 27

*Telebrands Corp. v. Newmetro Design, LLC*, No. 16-1981, 2016 WL 8999932, at *17 (D.N.J. Nov.
   10, 2016) ................................................................................................................................. 27

*Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 225 U.S.P.Q. 124 (2d Cir. 1985) ............. 21

*Versa Prod. Co. v. Bifold Co. (Mfg.)*, 50 F.3d 189, 200 (3d Cir. 1995) ...................................... 26

*Winter v. Nat. Res. Def Council, Inc.*, 555 U.S. 7, 20 (2008) ...................................................... 18

**Statutes**

15 U.S. Code § 1116(a)............................................................................................................ 16, 17

15 U.S. Code § 1125 (a)........................................................................................................... 17, 19

15 U.S.C. § 1114....................................................................................................................... 18, 19

15 U.S.C. §1127 ................................................................................................ 17

15 U.S.C. §1051 ................................................................................................ 17

15 U.S.C.A. §1052(f) ....................................................................................... 22

Fed. R. Civ. P. 65(a) ........................................................................................ 15

N.J.S.A. §56:3-13.1(a) ..................................................................................... 17

## Other Authorities

John G. Froemming, et al. Supreme Court denies cert in Herb Reed: Circuits to remain out of tune as to presumption of irreparable harm, LEXOLOGY.COM (Oct. 8, 2014), https://www.lexology.com/library/detail.aspx?g=efde4a89-138f-4fc6-8f16-a6ced39080cc ... 28


*McCarthy*, §15:29 ............................................................................................ 21

*McCarthy*, §23:155 .......................................................................................... 26

*Restatement Third, Unfair Competition* § 13 ................................................. 22

iv

## PRELIMINARY STATEMENT

Plaintiffs Atlantic Health System®, Inc. ("AHS") and Practice Associates Medical Group, P.A. d/b/a ATLANTIC MEDICAL GROUP® and AMG ("AMG") (collectively AHS and AMG "Plaintiffs") by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 65(a), respectfully submits this Memorandum of Law in support of Plaintiffs' application for a Preliminary Injunction enjoining Defendants Alliance Health Systems, LLC ("Alliance Health"), AMG Orthopedics d/b/a All be Healthy LLC ("AMG Ortho") and Nicholas Bufano ("Mr. Bufano") (collectively Alliance Health, AMG Ortho and Mr. Bufano "Defendants") from infringing Plaintiffs' trademarks and confusing patients and healthcare providers in the marketplace.

As explained below, this is a straightforward "trading off" matter, likely undertaken intentionally, where an "upstart" in the marketplace recognizes the value of trading off the brand of a dominant player. Plaintiffs submit it is impossible to believe that Defendants adopted (repeatedly) Plaintiffs' marks by mistake. Mr. Bufano's website "bio" demonstrates his involvement with Atlantic Spine Center (unaffiliated with Plaintiff *Atlantic Health System*®, Atlantic Spine Center's name has since changed); he then departed Atlantic Spine Center and formed *A*lliance *Health System* (unaffiliated with *Atlantic Health System*®), which his company and colleagues now abbreviate to *AHS*; and has now opened *AMG*Ortho, (unaffiliated with Plaintiff *Atlantic Medical Group*®, *AMG* brand services or its *AMG Ortho*pedics.)

Relevant to this application is Plaintiffs' AMG trademark and its notoriety and secondary meaning in the northern NJ medical and healthcare marketplace. While we submit Plaintiffs' *Atlantic Medical Group*® and *AMG* trademarks are actually "famous" in the marketplace, this application is based on: (i) the parties using identical trademarks, (ii) in connection with identical

1

services; (iii) the wide notoriety of Plaintiffs and their trademarks in the marketplace; (iv) the broad and robust secondary meaning of Plaintiffs' trademarks in the marketplace; (v) the resultant likelihood of confusion; and (vi) Defendants' obvious intent to trade off Plaintiffs' trademarks.

<u>**STATEMENT OF FACTS**</u>

By way of more general background, and as the Court likely knows, Plaintiffs' medical and health care services provided under the Atlantic Health System®, the AHS, the Atlantic Medical Group® and the AMG trademarks are highly regarded and considered "best in class" in northern New Jersey.   (Certification of Mitchell Shusteris ("Shusteris Cert."), Certification of Michael McDonald ("McDonald Cert."), Certification of Nicholas Molinaro ("Molinaro Cert.") and Certification of Dr. Christopher Hubbard ("Dr. Hubbard Cert.")) To that end, Plaintiffs have invested substantial amounts of time, money and effort in promoting, establishing and protecting its presence in the marketplace as a leader in the medical and health care services industry. (Shusteris Cert. ¶46, ¶54-67)

AHS runs five (5) hospitals in New Jersey and has over 400 AMG physician offices and urgent care centers with 4,000 physicians and 16,000 employees. (*Id.* ¶47) It has the leading market share position, more than double the next nearest competitor. (*Id.*)

Atlantic Health System®'s Morristown Medical Center was rated the "Number One" Hospital in New Jersey for the Fifth Year in a Row by U.S. News & World Report and it is one of the top acute care hospitals in New Jersey, and among the 50 best hospitals in the nation for Orthopedics (#23). (*Id.* ¶44) Morristown Medical Center was also ranked the number nine hospital in the New York Metro area. (*Id.*) All the foregoing under the flags of AHS and AMG. (*Id.*)

Atlantic Health System®'s Overlook Medical Center was also highly ranked in New Jersey and within the region as the number five hospital in New Jersey and tied for 22nd in the New York

Metro area. (*Id.* ¶45) Morristown Medical Center and Overlook Medical Center combine to make Atlantic Health System® New Jersey's only health system to hold two top-five ranked hospitals. (*Id.*) All the foregoing under the flags of AHS and AMG. (*Id.*)

AHS is accredited by The Joint Commission and is Medicare-certified; AHS has been named "100 Best Companies to Work For®" by Fortune magazine; Becker's Hospital Review has recognized AHS and its Atlantic Accountable Care Organization (ACO) "100 Accountable Care Organizations to Know;" Atlantic Home Care and Hospice received Accreditation from The Joint Commission; and Atlantic Rehabilitation is ranked a "Best Nursing Home" with five-star rating by U.S. News & World Report; Surgery, Internal Medicine and Family Medicine Residency Programs Accreditation: Accreditation Council for Graduate Medical Education; and Top Doctors: New Jersey Monthly. (*Id.* 48) All the foregoing under the flags of AHS and AMG. (*Id.*)

Substantially all of the foregoing services are "powered" by AHS' physician group, Atlantic Medical Group®, who in turn, is well known as AMG. (Shusteris Cert, McDonald Cert., Molinaro Cert. and Dr. Hubbard Cert.) Atlantic Medical Group® is listed in Crain's New York Metro Area's Largest Physician Group listings. (Shusteris Cert. ¶53)

<u>Atlantic Medical Group® ("AMG")</u>

As the Court also likely knows generally or at least understands, Atlantic Medical Group® ("AMG") is a team of physicians practicing medicine and providing health care services in northern New Jersey. (*Id.* ¶5,11) AMG has annual net revenues in excess of $400 million. (*Id.* ¶50) AMG was created to support Atlantic Health System® in achieving the triple aim of improving patients' experience of care, improving the health of the communities it serves, and reducing the overall cost of care. (*Id.* ¶5) AMG is comprised of community-and hospital-based primary care

3

physicians as well as specialists representing nearly every major specialty and subspecialty. (*Id.* ¶21) AMG has over 395 locations across northern and central New Jersey. (*Id.* ¶47)

As a physician-led and physician-governed organization, AMG is an integral part of positioning Atlantic Health System® to compete in today's health care environment. (*Id.* 11) AMG strives to deliver improved outcomes and coordination of care for patients, as well as provide professional satisfaction and a collective voice for employed physicians within Atlantic Health System®. (*Id.*)

AMG includes primary care physicians as well as numerous specialists, from orthopedics to rheumatology to sports medicine, (notably here the full and complete range of orthopedic care, from trainers and physical therapists to team and player doctors for the NY Jets®) (*Id.* ¶12) AMG also provides access to many pediatric specialists, including those who specialize in pediatric cardiology, pediatric surgery, child development and adolescent medicine. (*Id.* ¶13) AMG boasts a better-than-average ratio of primary care physicians to specialists and health care providers benefit from the system's cutting-edge research and ground-breaking results. (*Id.* ¶14) All AMG physicians are also part of the Atlantic Accountable Care Organization, one of the largest ACOs in the nation, which is working to reduce the growth of health care costs, improve quality and better coordinate care. (*Id.*)

Reinforcing for the Court AMG's orthopedic directed services, Atlantic Orthopedic Institute is nationally recognized for its multidisciplinary treatments that span pre-surgical education through post-operative rehabilitation. (*Id.* ¶15) Both www.AMGorthopedic.com; www.AMGorthopedic.net redirect to https://www.atlantichealth.org/locations/atlantic-medical-group/orthopedics-sports-medicine.html. (*Id.* ¶37) Moreover, Morristown Medical Center was ranked by U.S. News & World Report as one of the 30 best hospitals in the nation for orthopedics.

(*Id.* ¶16) AMG doctors and AMG perform more than 4,000 joint replacements each year and are industry leaders in minimal invasive incision surgery and gender-specific knee technology. (*Id.*) Similarly, AHS' Morristown Medical Center, and its AMG orthopods, are one of only four hospitals in New Jersey designated a Level 1 Regional Trauma Center by the American College of Surgeons. (*Id.* ¶17) Morristown Medical Center, and its AMG orthopods, are equipped to treat the most serious orthopedic injuries. (*Id.*)

### AHS' and AMG's Effort to Proactively Educate and Serve Patients and Physicians

As a part of its mission, including its mission to inform and educate patients and physicians, and to insure patients receive appropriate and prompt care (and to insure they are not confused by competing unscrupulous service providers), AHS has filed and federally registered over 57 trademarks with the United States Patent and Trademark Office ("USPTO"); has 5 pending trademark applications (including directed to the AMG trademarks as noted below) and has numerous other common law trademarks which it uses to distinguish its medical and healthcare services, by way of a general description, from those of others. (*Id.* ¶32) ***Confusion is not in the patients' or anyone else's interest.*** (*Id.*) Those include:

#### The ATLANTIC MEDICAL GROUP® and AMG Trademarks

United States Trademark Registration. No. ("Reg. No.") 4,744,864 for ATLANTIC MEDICAL GROUP® used in connection with: *"*Health care; medical services; medical services in the field of internal medicine, oncology, nephrology, endocrinology, pediatric medicine, obstetrics and gynecology, gastroenterology, cardiology, ***orthopedic surgery***, pulmonology and hematology; pediatric health care services; pediatric oncology services" in International Class 044 with a date of first use of January 29, 2015. (*Id.* ¶31)

Of particular relevance here, not from a registration perspective, but from a scope of use

perspective are the common law AMG trademark, now embodied in the following USPTO

Application Serial Nos.:

in International Class 42, Serial No. 97577071, is directed to: Medical laboratory services; Medical research; Providing medical and scientific research information in the field of pharmaceuticals and clinical trials. (*Id.* ¶33)

in International Class 44, Serial No. 97576589, is directed to:  ***Ambulant medical care***; Consulting services in the fields of health and nutrition; Counseling services in the fields of health, nutrition and lifestyle wellness; Dermatology services; Dietary and nutritional guidance; Drug use testing services; Emergency medical assistance; ***Fitting of orthopedic devices;*** Fitting of prosthetics; Gynecology services; ***Health care***; Hospitals; Medical services; Medical testing for diagnostic or treatment purposes; Nursing services; ***Physical rehabilitation***; ***Physical therapy***; ***Physician services***; ***Providing a web site featuring information on health*** and nutrition; ***Providing a web site featuring medical information***; Psychiatric services; ***Rehabilitation patient care services***; Surgery. (*Id.*)

in International Class 16, Serial No. 97582840, is directed to: Educational publications, namely, pamphlets, brochures, leaflets and periodicals in the fields of medical services, healthcare, nutrition, ***sports training***, pain management, preventive medicine and alternative medical care procedures; Research reports featuring findings related to healthcare and medical services. (*Id.*)

in International Class 35, Serial No. 97579834, is directed to: Medical referrals; Physician referrals; Promoting collaboration within the scientific, research and medical communities to achieve advances in the field of healthcare; Promoting public awareness of healthcare and preventive medicine concerns; Providing advertising, marketing and promotional services for the pharmaceutical and medical industry; Providing an on-line directory information service featuring information regarding medical services and medical specialist services providers; ***Providing assistance, fitness evaluation and consultation to corporate clients to help their employees make health, wellness and nutritional changes in their daily living to increase productivity and lower health care costs***; Providing consumer information in the field of healthcare; Retail pharmacy services. (*Id.*)

in International Class 41, Serial No. 97579929, is directed to: ***Educational services***, namely, providing classes and seminars in the fields of medicine, preventive medicine, rehabilitation, ***sports-related medical concerns***, nutrition and health and wellness; Entertainment services, namely, contest and incentive award programs designed to reward program participants who exercise, make healthy eating choices, and engage in other health-promoting activities; ***Health club services, namely, providing instruction and equipment in the field of physical exercise***; Medical training and teaching; On-line publication of health magazines and newsletters; Organization of seminars, working groups, research groups and conventions, in the field of medicine; Providing continuing medical education courses; Providing continuing nursing education

courses; Providing on-line newsletters in the field of health, wellness, medical issues, exercise and fitness. (*Id.*)

<u>The ATLANTIC HEALTH SYSTEM® & Plaintiffs' Marks</u>

Reg. No. 2793357 for ATLANTIC HEALTH SYSTEM for use in connection with:

"Health care cost review, health care utilization and review services, and promoting the hospital, medical, surgical, health care, physical therapy, psychological treatment, physical rehabilitation, medical research, and medical consulting services of others and procuring healthcare services for others by contracting with healthcare providers" in International Class 035 with a date of first use of September 1995; and

"Health care in the nature of hospital, medical, surgical, health care, physical therapy, psychological treatment, physical rehabilitation and medical research" in International Class 042 with a date of first use of May 1986. (*Id.* ¶30)

Reg. No. 3914108 for ATLANTIC HEALTH, for use in connection with:

"Educational publications, namely, pamphlets, brochures, leaflets and periodicals in the fields of medical services, healthcare, nutrition, sports training, pain management, preventive medicine and alternative medical care procedures; Research reports featuring findings related to healthcare and medical services;" (*Id.* ¶34)

Reg. No. 3914109 for ATLANTIC HEALTH for use in connection with:

"Medical referrals; Physician referrals; Promoting collaboration within the scientific, research and medical communities to achieve advances in the field of healthcare; Promoting public awareness of healthcare and preventive medicine concerns; Providing advertising, marketing and promotional services for the pharmaceutical and medical industry; Providing an on-line directory information service featuring information regarding medical services and medical specialist services providers; Providing assistance, fitness evaluation and consultation to corporate clients to help their employees make health, wellness and nutritional changes in their daily living to increase productivity and lower health care costs; Providing consumer information in the field of healthcare; Retail pharmacy services;" (*Id.*)

Reg. No. 3914111 for ATLANTIC HEALTH for use in connection with:

"Medical laboratory services; Medical research; Providing medical and scientific research information in the field of pharmaceuticals and clinical trials;" (*Id.*)

Reg. No. 3914112 for ATLANTIC HEALTH for use in connection with:

"Ambulant medical care; Consulting services in the fields of health and nutrition; Counseling services in the fields of health, nutrition and lifestyle wellness; Dermatology

services; Dietary and nutritional guidance; Drug use testing services; Emergency medical assistance; Fitting of orthopedic devices; Fitting of prosthetics; Gynecology services; Health care; Hospitals; Medical services; Medical testing for diagnostic or treatment purposes; Nursing services; Physical rehabilitation; Physical therapy; Physician services; Providing a web site featuring information on health and nutrition; Providing a web site featuring medical information; Psychiatric services; Rehabilitation patient care services; Surgery;" (*Id.*)

Reg. No. 3914110 for ATLANTIC HEALTH for use in connection with:

"Educational services, namely, providing classes and seminars in the fields of medicine, preventive medicine, rehabilitation, sports-related medical concerns, nutrition and health and wellness; Entertainment services, namely, contest and incentive award programs designed to reward program participants who exercise, make healthy eating choices, and engage in other health-promoting activities; Health club services, namely, providing instruction and equipment in the field of physical exercise; Medical training and teaching; On-line publication of health magazines and newsletters; Organization of seminars, working groups, research groups and conventions, in the field of medicine; Providing continuing medical education courses; Providing continuing nursing education courses; Providing on-line newsletters in the field of health, wellness, medical issues, exercise and fitness;" (*Id.*)

Reg. No. 5803007 for ATLANTIC for use in connection with:

"Medical training and teaching by medical professionals, namely, medical doctors, nurses and emergency medical technicians;" (*Id.*)

Reg. No. 5760192 for ATLANTIC for use in connection with:

"Ambulance and helicopter transport in the field of health and medicine; Consulting services in the field of air medical operations in the nature of air medical transport; Medical transport services;" and (*Id.*)

Reg. No. 5495065 for ATLANTIC for use in connection with:

"24-hour response center which provides medical information to emergency medical personnel and allows members to update their medical/personal files; Emergency medical services; Emergency medical services offered in or from a remote, mobile or temporary on-site location; Emergency medical services provided on an aircraft; Emergency medical response services." (*Id.*)

(Collectively all the foregoing trademarks (ATLANTIC MEDICAL GROUP®, AMG, ATLANTIC HEALTH SYSTEM®, ATLANTIC HEALTH® and AHS) are referred to collectively as "Plaintiffs' Marks"). (*Id.*) For clarity, AHS is the owner of the common law

trademarks AMG (i.e., the acronym for ATLANTIC MEDICAL GROUP®) and AHS (i.e., the acronym for ATLANTIC HEALTH SYSTEM), in use since the inception of the ATLANTIC HEALTH SYSTEM® and ATLANTIC MEDICAL GROUP® marks, respectively. (*Id.* ¶30-34) AHS' common law rights and the foregoing registrations grant AHS the exclusive right to use the associated marks in connection with healthcare and related and ancillary services. (*Id.*)

## **Defendants' Infringing Activities**

We submit that record is clear that Defendants have willfully infringed Plaintiffs' common law AMG mark in many ways.  (*Id.* ¶72-89) From a brief review of readily available internet resources associated with Defendants' use of Plaintiffs' Trademarks, Plaintiffs are aware that Defendants have used and posted the following infringing ads:



a.

(*Id.* ¶89a) https://northjerseychamber.org/index.php/member-directory/#!biz/id/62e1eb819cd2d824c5234123



b.

(*Id.* ¶89b) https://www.healthgrades.com/group-directory/nj-new-jersey/fair-lawn/amg-orthopedics-xd32rh0b



c.

(*Id.* ¶89c) https://www.linkedin.com/in/markharringtondo/

We note of interest Mr. Harrington's Organizations and Interests:



(*Id.*)



d.                                                                                    (*Id.* ¶89d)



e. (*Id.* ¶87)

We note here, as prolific and inveterate infringers, the Mercedes logo versus the Defendants'
AMG Orthopedics logos side by side:



And thanks to the internet, we know exactly when they launched their fledgling AMGOrtho venture:



f.

(*Id.* ¶87)



g.

(*Id.*)

As to infringing conduct, and the obvious and clumsy manner in which these Defendants'

are willfully infringing Plaintiffs' trademarks, no one's first choice for a domain is

www.amgortho.com, it is www.amgorthopedics.com, but unfortunately, that domain was taken –

taken by:



(*Id.* ¶36-38)

14

Finally, we note Mr. Bufano's use of AHS in his bio:



As promised, this matter is a straightforward "trading off" matter, likely undertaken intentionally, where an "upstart" in the marketplace recognizes the value of trading off the brand of the dominant player with the great reputation. We submit it is impossible to believe that Defendants adopted (repeatedly) Plaintiffs' marks by mistake.  Mr. Bufano's bio, above, provides: "After his tenure as CEO of an orthopedic and pain group, Atlantic Spine, Nick took on his next challenge, founding the Alliance Health Systems." (*Id.* ¶72-74) So, he started with Atlantic Spine Center (unaffiliated with Plaintiff ***Atlantic Health System***®, name since changed); he then departed Atlantic Spine and formed **A**lliance ***Health System*** (unaffiliated with ***Atlantic Health System***®), which his company and colleagues now abbreviate to ***AHS*** and who have now opened *AMG*Ortho, (unaffiliated with Plaintiff ***Atlantic Medical Group***®, *AMG* brand services or its ***AMG Ortho***pedics.) (*Id.*)

## ARGUMENT

Defendants' actions, as set forth above, have infringed the trademarks owned by Plaintiffs. Therefore, Plaintiffs respectfully request that the Court issue, pursuant to Fed. R. Civ. P. 65(a), a Preliminary Injunction enjoining Defendants from further infringing Plaintiffs' Marks.

## I.   LEGAL STANDARD FOR INJUNCTIVE RELIEF.

15 U.S. Code §1116(a) entrusts courts with the power to grant injunctive relief on such terms as it may deem reasonable to prevent or restrain trademark infringement. "Injunctions

require the familiar showing of a likelihood of success on the merits, irreparable harm that outweighs the burden on the nonmoving party, and benefit to the public interest." *Nichino Am., Inc. v. Valent U.S.A., LLC*, No. 21-1850 (3d Cir. Aug. 12, 2022), citing *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Here, Plaintiffs are likely to succeed on the merits of their infringement claims, will suffer irreparable harm which outweighs the burden on Defendants if injunctive relief is not granted, and the public interest will be served in granting such relief[1]. Moreover, Plaintiffs submit that a heightened concern for irreparable injury and serving the public interest exists here given the potential for patients, in an effort to reach one of Plaintiffs' physicians, losing precious time by mistakenly calling Defendants in error, or if attempting to reach Defendants in an emergency, contacting Plaintiffs – this works both ways.

As noted in *Cola Co. v. Busch* based on the evidence there:  "that the defendant with an infinite number of names to choose from, in designating his product, chose the designation [of an existing mark] solely for the purpose of taking advantage of the good will and reputation of the plaintiff's product, which would inure to the benefit as well as to the deception of the public. One who enters a field already occupied by another as in the instant case, should be careful in the selection of a tradename or trademark, keeping far enough away from the plaintiff's tradename or trademark to avoid any possible confusion." *Cola Co.*, 44 F. Supp. 405, 410 (E.D.Pa., 1942). It is hornbook law that trademarks, service marks and trade names are all protected under the rubric of unfair competition. *American Steel Foundries v. Robertson*, 269 U.S. 372, 380, 46 S. Ct. 160 (1926) ("The law of trade-marks is but a part of the broader law of unfair competition, the general

---

[1] If state law is applied to the common law marks, the same general standard applies: a preliminary injunction is appropriate where: (a) it is necessary to prevent irreparable harm; (b) the underlying law is well settled; (c) there is a "reasonable probability of ultimate success on the merits"; and (d) on a balancing of the equities and the hardships, it appears that injury to the moving party upon a failure to grant a temporary restraining order and preliminary injunction outweighs the injury to the other parties against whom relief is granted. *Crowe v. Degioia*, 90 N.J. 126, 132-134, 447 A.2d 173, 176 (1982).

purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another.")  *Christian Science Bd. of Directors of First Church of Christ, Scientist v. Evans*, 105 N.J. 297, 520 A.2d 1347, 2 U.S.P.Q.2d 1093, 1095 (1987) ("[T]he subjects of trademarks, service marks, and trade names are branches" of the law of unfair competition.)

The Lanham Act, 15 §§U.S.C. 1051 *et. seq.* defines "trademark" as follows: The term "service mark" means any word, name, symbol, or device, or any combination thereof … used by a person … to identify and distinguish the services of one person, … from the services of others and to indicate the source of the services, even if that source is unknown. 15 U.S.C. §1127.[2]

The Lanham Act also protects common law rights (15 U.S. Code § 1125 (a)), and provides for preliminary injunctions for the infringement of registered and common law marks (15 U.S. Code § 1116(a)). Moreover, as a result of the Trademark Modernization Act (the "TMA"), a rebuttable presumption of irreparable harm in trademark infringement injunction applications exists. *Nichino Am., Inc. v. Valent U.S.A., LLC*, No. 21-1850 (3d Cir. Aug. 12, 2022). Specifically, the TMA amends 15 U.S.C. § 1116(a) to add:

> [C]ourts … shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, . . . ***to prevent a violation under subsection (a) . . . of section 1125[3] of this title*** [common law marks]. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of . . . likelihood of success on the merits . . .

---

[2] To the same end, N.J.S.A. §56:3-13.1(a) provides: "Service mark" means any word, name, symbol, or device, or any combination thereof, used by a person to identify and distinguish the services of one person, including a unique service, from the services of others, and to indicate the source of the services, even if that source is unknown. Service mark includes titles, character names used by a person, and other distinctive features of radio or television programs, notwithstanding that they, or the programs, advertise the goods of the sponsor.

[3] 15 U.S. Code §1125(a)  provides: (a) Civil action (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which - (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

**II.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR TRADEMARK INFRINGEMENT CLAIMS BECAUSE PLAINTIFFS HAVE VALID AND LEGALLY PROTECTABLE FEDERAL AND COMMON LAW TRADEMARKS, PLAINTIFFS OWN THE TRADEMARKS AND THE DEFENDANTS' USE OF THE TRADEMARKS IS LIKELY TO CREATE CONFUSION CONCERNING THE ORIGIN OF THE GOODS AND SERVICES.**

To satisfy the first element of the preliminary injunction standard, the moving party must demonstrate that it is "likely to succeed on the merits." See *Winter v. Nat. Res. Def Council, Inc.*, 555 U.S. 7, 20 (2008); accord *Am. Ex. Travel Related Servs., Inc. a Sidamon Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012); *Kos Phanns., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *see also Adams v. Freedom Forge Corp.*, 204 F.3d 475, 486 (3d Cir. 2000). To satisfy that burden here, Plaintiffs must establish that: (1) the marks are valid and legally protectable; (2) the marks are owned by Plaintiffs; and (3) the Defendants' use of the marks to identify their services is likely to create confusion concerning the origin of the goods or services. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1 125(a)(1)(A), by identical standards"); *See also Chanel, Inc. v. Matos*, civ. No. 14-3509, 2015 WL 4773072, at *10 n.6 (D.N.J. Aug. 13, 2015) ("Courts in the Third Circuit consider claims for trademark infringement and for false designation of origin under an identical standard.")(citing *A&H Sportswear*); *Pedi-Care, Inc. v. Pedi-A-Care Nursing Inc.*, 656 F. Supp. 449, 453 (D.N.J. 1987); *Holiday Inns, Inc. v. Trump*, 617 F. Supp. 1443, 1464 (D.N.J. 1985). Each of these factors favor Plaintiffs.

Similarly, under the Lanham Act Section 32, 15 U.S.C. Section 1114(1):

(1) Any person who shall, without the consent of the registrant—
        (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising

of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . . Shall be liable in a civil action by the registrant. . . § 1114(l)(a).

Furthermore, Section 43(a) of the Lanham Act proscribes certain forms of unfair competition, described as "false designation of origin" or "false description." 15 U.S.C. §1125(a). That section provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>> (a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The elements of a false designation of origin trademark claim under the Lanham Act track the elements of a common law trademark infringement claim[4].

**1.  Plaintiffs' Marks are valid and are legally protectable.**

ATLANTIC HEALTH SYSTEM® and ATLANTIC MEDICAL GROUP®:

Plaintiffs have valid, enforceable and prior rights in the Plaintiff's Marks. Plaintiffs are the owners of all right, title and interest in and to federal registrations for two registrations, Reg. No. Reg. No. 4,744,864 and Reg. No. 2,793,357, both of which presently are valid and subsisting. These registrations are issued on the Principal Register, contain no disclaimers, and constitute prima facie showing of the validity of the registered mark and of Plaintiffs' exclusive right to use these marks on the goods and services specified in the registration – and any other marks likely to

---

[4] A plaintiff must prove "(1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Parks, LLC v. Tyson Foods, Inc.*, 186 F. Supp. 3d 405, 410 (2016); citing *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)

cause confusion with those marks. 15 U.S.C. §1057(b). Moreover, each of those registrations has achieved incontestable status under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

<u>AHS<sup>TM</sup> and AMG<sup>TM</sup></u>:

As set forth in *Commerce Nat'l. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc*.: "If the mark has not been federally registered … then validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive." 214 F.3d 432, 438 (3d Cir. 2000). Here, AMG and AHS have acquired distinctiveness, secondary meaning and are inherently distinctive as neither AHS nor AMG have meanings other than source designations.

Further, it is undisputed that Plaintiffs have actual priority over Defendants' usage. Plaintiffs' use of the Plaintiffs' Marks - starting in 1986 - predates Defendants' subsequent adoptions and use by nearly two decades. Thus, Plaintiffs are likely to establish that they have valid priority trademark rights in these marks. And, the same holds true, albeit with different dates of first use for Plaintiffs' AMG mark, and Defendants' infringing use of AMG.

As set forth in *Ford Motor Co. v. Summit Motor Products, Inc.* "With respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce. *Tally-Ho, Inc. v. Coast Community College District*, 889 F.2d 1018, 1022-23 (11th Cir. 1989) ("actual and continuous use is required to acquire and retain a protectable interest in a mark," while the "first to use a mark on a product . . . in a . . . market acquires rights in the mark in that market"); *Hydro-Dynamics, Inc. v. George Putnam Co., Inc*., 811 F.2d 1470, 1473 (Fed.Cir. 1987) ("trademark rights in the United States are acquired by . . . adoption and use, not by registration"); *Kohler Mfg. v. Beeshore*, 59 F. 572, 576 (3d Cir. 1893) (there must be an intention "to adopt [the mark] as a trademark"); *Caesar's World, Inc. v. Caesar's*

*Palace*, 490 F. Supp. 818, 822 (D.N.J. 1980) ("Common law rights are acquired in a . . . mark by adopting and using the mark. . . ."). 930 F.2d 277, 292 (3d Cir. 1991)

Whether or not a symbol has acquired secondary meaning is a question of fact.  McCarthy, §15:29.  Different circuits around the country have set out different formulas for determining this question, but a well-cited test was espoused by the Third Circuit in *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d Cir. 1991).  That opinion's non-exclusive list of factors which may be considered included: sales and advertising leading to buyer association; length of use; exclusivity of use; the fact of copying; customer surveys; customer testimony; the use of the mark in trade journals; the size of the company; the number of sales; the number of customers; and actual confusion. *See Ford Motor Co.,* 930 F.2d at 292. "In assessing the existence of secondary meaning, no single factor is determinative [and] every element need not be proved." *Thompson Medical Co. v. Pfizer, Inc*., 753 F.2d 208, 225 U.S.P.Q. 124 (2d Cir. 1985).  Another relevant factor is advertising expenditures. *Id*.  In the present case, Plaintiffs clearly satisfy at least 9 of the 11 factors:

Size of the Company and Amount of Sales:

Plaintiffs' revenues for 2020 $3,069,163,000 and their respective employee counts are noted above. Plaintiffs are substantial entities.

Advertising Expenditures:    Plaintiffs advertising expenditures are, on average approximately $25,000,000 a year. While primarily directed to the Atlantic Health System® and AHS family of medical and health care providers, approximately $3,140,000 was specifically directed the Atlantic Medical Group and AMG medical and health care providers. Plaintiffs advertising budget is substantial indeed.

Length and Exclusivity of Use:  While the length of time Plaintiffs have used their marks is not per se crucial, it stands to reason that the longer one has used a mark, the stronger the presumption that secondary meaning has been acquired.  See *Restatement Third, Unfair Competition* § 13, comment e (Length of time of use is relevant to the issue of secondary meaning.) Here, Plaintiffs began using the trademark Atlantic Health System® in or around 1986, the AHS quickly became an accepted abbreviation of the foregoing, the Atlantic Medical Group trademark was first used in 2015 and the AMG trademark quickly became an accepted abbreviation of the foregoing – all the foregoing being used to represent Plaintiffs' family of medical and health care providers.  (*Id.* ¶) Furthermore, as noted in the Certification of Mitchell Shusteris, at all times its use of the Atlantic Health System®, AHS, Atlantic Medical Group® and AMG trademarks has been exclusive and continuous in the northern New Jersey marketplace.  We note that the Lanham Act presumes secondary meaning after five years of "substantially exclusive and continuous use." 15 U.S.C.A. §1052(f).

Intentional Copying:  As noted above, Mr. Bufano's website "bio" demonstrates his involvement with Atlantic Spine Center (unaffiliated with Plaintiff ***Atlantic Health System***®, name since changed); he then departed Atlantic Spine and formed ***A****lliance **Health System*** (unaffiliated with ***Atlantic Health System***®), which his company and colleagues now abbreviate to ***AHS*** and who have now opened ***AMG****Ortho, (unaffiliated with Plaintiff ***Atlantic Medical Group, AMG*** brand services or its ***AMG Ortho****pedics.) This is all supported by common "network" links on LinkedIn and other clear evidence of Defendants inescapable knowledge of Plaintiffs.

<u>Customer Testimony:</u>  Firstly, we note contacting patients for "reviews" is antithetical to the ethical obligations of medical and health care providers. Notwithstanding the foregoing, we note the following small sample of unsolicited reviews provided by patients post visit:

"Any time I visit an **AMG** practice I receive quality care. Dr. Joshi, my PCP is very thorough and I have never felt rushed as I did with other doctors elsewhere. The office is clean, the staff is friendly and helpful and most importantly I am no number but a person." (See attached Exhibit B to Shusteris Cert.)

"Recently visited Dr. Martins and the **AMG** Sports Medicine group. Incredible patient care. Very short wait time, x-rays done onsite, and a thorough explanation of my injuries, the recovery process, and avoiding future injuries." (*Id.*)

"My primary care physician is an AMG doctor who has always provided me with the best care possible." (*Id.*)

"After years I finally changed my doctor over to Dr.VonBerg and it was the greatest decision I ever made! The staff is extremely friendly & the doctor is great with her patients. When checking in, Brittany at the front desk was amazing helping me register as a new patient. Brittany took her time to make sure I was set as a new patient and answered all of my questions. Karla also took my labs and was super friendly and great! Overall, my visit at **AMG** was amazing and I am very satisfied with my provider & their staff!" (*Id.*)

"Let me just start by saying the Clark location has an amazing staff. I have a lot to write so bare with me. I have been an **AMG** patient for couple of years, but lately I have been back and forth in the office the past month because I have been helping my fiancé with his paperwork for his state trooper process." (*Id.*)

"I have been going to **AMG** for almost a year now and every time I come, the staff are incredibly nice and kind. Front desk, nurses, and phlebotomists are all just super nice and caring and I never feel like I'm a burden or an annoyance when I come for appointments. As for my doctor, Dr. Alexander may be the best provider I've ever had, and I'm so immensely happy I found her. She's very thoughtful, listens, and is very quick to empathize and help with next steps. The online portal as a patient is super great too to refill prescriptions/ask questions that don't need an appointment. Just super great all around." (*Id.*)

"Everyone at **AMG** is awesome! My primary care provider, Maria Fuentes, is the best. She's always on top of my medical issues and she's extremely caring & compassionate." (*Id.*)

"I just met with my primary care provider at Atlantic Medical Group (MMC Family Medicine) and was so impressed with how thorough they were when reviewing my health

records. I felt a genuine concern for my well-being! And I love that **AMG** has online scheduling capabilities with many of their practices!" (*Id.*)

<u>Number of Customers</u>:  Ignoring Atlantic Health System® for the moment, 1,370,000 unique patients were seen and cared for by Atlantic Medical Group and AMG branded medical and health care providers in 2021 alone.

<u>Actual Confusion</u>:  Finally, the certifications of Nicholas Molinaro, Michael McDonald and Dr. Christopher Hubbard attest to the fact that there has already been actual confusion in the marketplace.  The Court is reminded that Atlantic Medical Group® has two "customer" cohorts: patient and physicians. The physician confusion made of record is at least as powerful, if not more powerful from an actual business model perspective, when physicians and prospective physicians are concerned.

## 2. Plaintiffs own the ATLANTIC HEALTH SYSTEM®, AHS™, ATLANTIC MEDICAL GROUP® and AMG™ marks.

Plaintiffs are the owners of all right, title and interest in and to the ATLANTIC HEALTH SYSTEM®, AHS™, ATLANTIC MEDICAL GROUP® and AMG™ marks. As set forth in *Ford Motor Co. v. Summit Motor Products, Inc.* "With respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce.

## 3. Defendants' use of AHS and AMG is likely to cause confusion with Plaintiffs' Marks.

The heart of a successful claim for trademark infringement is a showing of likelihood of confusion. For the third element of a trademark claim, the court must analyze: (1) whether "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark," and (2) "the more elementary question of whether [defendants] made any use of the mark." *Nike, Inc. v.*

*Eastern Ports Custom Brokers, Inc.*, 2:11-cv-4390-CCC-MF, 2018 WL 3472628, at *4 (D.N.J. 19 July 2018) [citing *Zany Toys, LLC v. Pearl Enterprises, LLC*, No. 13-5262, 2014 WL 2168415, at *8 (D.N.J. 23 May 2014)]. Here, neither of those issues is in fair dispute given the identical marks being used in connection with identical services.

The Third Circuit's normally requires consideration of the so-called *Lapp* Factors[5]. However, that test was established to determine confusion between ***non-competing goods or only somewhat related goods***.  More recently, the Third Circuit has had an opportunity to re-think this test:

> . . . [W]e do not hold that a District Court must use the factors.  In fact our precedents suggest the opposite. ***If products are directly competing, and the marks are clearly very similar, a district judge should feel free to consider only the similarity of the marks themselves.*** See, e.g., *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 195 (3d Cir.1990) . . . ***Moreover, the court often need not apply each and every factor; when goods are directly competing, both precedent and common sense counsel that the similarity of the marks takes on great prominence***. [Emphasis added]  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 214 -215 (3d Cir. 2000).

When products directly compete, mark similarity "may be the most important of the ten factors in Lapp." *Fisons Horticulture, Inc., Appellant in No. 93-7224, v. Vigoro Industries, Inc.*, Appellant in No. 93-7287, 30 F.3.3d, 466, 476 (3d Cir. 1994).

Defendants operate a for-profit medical services provider, advertised extensively via its website in the United States, using the "AHS" and "AMG" trademarks in their marketing materials.

---

[5] (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market. Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3rd Cir. 1983).

Defendants' registration of the domain and use of the "amgortho.com" domain long after Plaintiff's registration and use of the "amgorthopedics.com" domain says it all.

Defendants' use of the "AHS" and "AMG" marks evidences an obvious intent to deceive. Notably, "the defendant's intent to confuse or deceive consumers can be very probative of likelihood of confusion." *Versa Prod. Co. v. Bifold Co. (Mfg.)*, 50 F.3d 189, 200 (3d Cir. 1995). That is, "***when we find a newcomer in the field claiming to build for himself an identity depending upon subtle associations which in fact impinge upon those already established by the plaintiff, protestations of innocent intent overtax the credulity***." *McCarthy*, §23:155 (citing *Premier-Pabst Corp. v. Elm City Brewing Co.*, 9 F. Supp. 754 (D. Conn. 1935). Defendants' entire identity revolves around Plaintiffs' Marks. Defendants built their "business" off the goodwill associated with Plaintiffs' "***A*ATLANTIC *HEALTH SYSTEM*®**" and "***AHS***" marks before adopting another mark, "***AMG***", based on Plaintiffs' use of its "ATLANTIC MEDICAL GROUP®" and "***AMG***" marks. Defendants have evidenced a pattern of infringing activity to trade on the goodwill and reputation of Plaintiffs and Plaintiffs' Marks demonstrating an intent to deceive and further evidencing likelihood of confusion.

### III.   PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF A PRELIMINARY INJUNCTION IS NOT GRANTED BECAUSE DEFENDANTS CONTINUED USE AND THREATS OF FUTURE INFRINGEMENT ARE MORE THAN MERE CONCLUSORY ALLEGATIONS.

Notwithstanding the presumption of irreparable harm set forth in the Trademark Modernization Act (*Nichino Am., Inc. v. Valent)* the evidence of record demonstrates: "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 229 (D.N.J. 2009) (quoting *Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir. 1994)). "Grounds for irreparable injury include loss of

control of reputation, loss of trade, and loss of good will." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (internal citation omitted). Although a prima facie case for infringement, alone, does not create a presumption of irreparable injury "irreparable harm may be based on past and future infringement" if a plaintiff can "demonstrate a threat of future infringement 'beyond mere conclusory allegations.'" *TD Bank, N.A. v. Hill*, 2015 WL 4523570, at *22 (D.N.J. Jul. 27, 2015) (quoting *Brighton Collectibles, Inc. v. Pedre Watch Co*., 2013 WL 5719071, at *4 (S.D. Cal. Oct. 21, 2013)). *Silvertop Associates, Inc.*, 319 F. Supp. 3d at 769 ("irreparable harm may be based on past and future infringement if a plaintiff can 'demonstrate a threat of future infringement beyond mere conclusory allegations.'"); *see also Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 952 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) ("In situations where there is a clear pattern of trademark infringement by the defendant, and there is a threat that other trademarks of the plaintiff may be infringed by the defendant, an injunction may be issued as to future works of the plaintiff as well as existing works (i.e., as to litigated works as well as non-litigated works of like character).").

In *Telebrands Corp. v. Newmetro Design, LLC*, No. 16-1981, 2016 WL 8999932, at *17 (D.N.J. Nov. 10, 2016), this Court found that irreparable harm was established because the parties clearly stated their intent to continue selling the infringing products in issue. The Court determined that this clear intent to continue infringing activities "demonstrated a threat of future infringement—with the attendant loss of control of reputation, trade, and good will—that is far more than a 'conclusory allegation.'" *Id.* at *18. Here, Defendants' pernicious pattern of infringement and the conversation between Plaintiffs' counsel and Defendants' counsel confirmed that Defendants were unwilling to cease use of any of the complained of marks. Irreparable harm is much more than conclusory here.

Moreover, we again make clear Plaintiffs' very real fear that precious moments may be lost by patients when they search for AMG and instead get the wrong party. For example, if one were to search Google for AMG Orthopedics, the following results are returned:



Fully 50% (2 of 4) of the top 4 results are the infringing Defendants. We leave it to the Court to imagine the various potential incredibly dangerous end results that can follow from a misdirected call or perhaps office visit.  Moreover, trademark infringement causes reputational harm and public confusion – two harms that are "nearly impossible to calculate."[6]  Given that the Lanham Act is, at its core, a consumer protection law, public policy supports a finding of irreparable harm in trademark infringement cases since the harm is suffered by not only the trademark owner, but also by consumers.

---

[6] John G. Froemming, et al. *Supreme Court denies cert in Herb Reed: Circuits to remain out of tune as to presumption of irreparable harm*, LEXOLOGY.COM (Oct. 8, 2014), https://www.lexology.com/library/detail.aspx?g=efde4a89-138f-4fc6-8f16-a6ced39080cc

## IV.    THE BALANCE OF HARDSHIP WEIGHS IN FAVOR OF GRANTING AN INJUNCTION AT THIS TIME BECAUSE DEFENDANTS ARE MERELY BEING ASKED TO COMPLY WITH THE LANHAM ACT.

The third prong of the preliminary injunction standard is designed "to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the trademark's owner." *See Silvertop Associates, Inc.*, 319 F. Supp. 3d at 769 (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)). In making this determination, Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Buzz Bee Toys, Inc. v. Swimways Corp.*, 20 F. Supp. 3d 483, 510 (D.N.J. 2014) (citing *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389, 399 (D.N.J. 1989)). "[T]he balance [of hardships] weighs strongly in favor of [an injunction] where all that is requested is that Defendant comply with the Lanham Act." *See Silvertop Associates, Inc.*, 319 F. Supp. 3d at 769 (citing *Warner Bros. Records Inc. v. Walker*, 704 F. Supp. 2d 460, 469 (W.D. Pa. 2010)).

In *Broad. Music, Inc. v. Amici III, Inc.*, 14-CV-5002, 2014 WL 7271915, at *2 (D.N.J. Dec. 16, 2014), this Court determined that the balance of hardships weighed in favor of granting injunctive relief because "the only hardship imposed upon the Defendants is that they refrain from infringing, whereas if an injunction were not issued, then Plaintiffs suffer the hardships that in fact gave rise to their claims in this case."

Here, Plaintiffs are merely asking that Defendants comply with the Lanham Act and stop infringing Plaintiffs' marks. Specifically, Plaintiffs ask that Defendants stop using ATLANTIC HEALTH SYSTEM®, AHS™, ATLANTIC MEDICAL GROUP® and AMG™ and any other derivatives thereof likely to result in confusion.

We also note that Defendants have only just begun using the AMG mark in early 2022, only just discovered by Plaintiffs. As such, and before Defendants expand their use, it must be stopped. This problem will only worsen if an injunction is not entered.

To this end, if the injunction is not granted, the hardships Plaintiffs and their patients will likely suffer are the risk of future infringement, the potential loss of revenue, reputation and good will as there is a likelihood of confusion if Defendants continue to infringe on Plaintiffs' mark and the potential for patient confusion and injury. All of that will happen here if Plaintiff is no longer in control of the services being rendered under and in connection with Plaintiffs' Trademarks.

## V.     THE PUBLIC INTEREST WILL BE SERVED BY GRANTING THE PRELIMINARY INJUNCTION AND PROTECTING PLAINTIFFS' TRADEMARKS.

"Once the likelihood of success on the merits and irreparable injury to plaintiff have been amply demonstrated, as they have here, 'it will almost always be the case that the public interest will favor' injunctive relief." *Advance Magazine Publishers Inc. v. Vogue Int'l*, 123 F. Supp. 2d 790, 802 (D.N.J. 2000) (internal citations omitted) citing *Jews for Jesus*, 993 F.Supp. at 312; *AT&T, 42 F.3d at 1427 n. 8*. In addition, public interest is "most often a synonym for the right of the public not to be deceived or confused." *Opticians Ass'n*, 920 F.2d at 197. "The public interest question in Lanham Act cases is "the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy." *Kos Pharms., Inc. v. Andrx Corp*., 369 F.3d 700, 708. Moreover, public interest favors making misconduct such as trademark infringement unprofitable. *Banjo Buddies, Inc. v Renosky*, 399 F 3d 168, 175 (3d Cir 2005). Here, The issuance of an injunction in this case will protect the public from this deceptive and confusing use of the AMG trademark and an injunction is therefore in the public interest.

## VI.     DEFENDANT NICHOLAS BUFANO IS PERSONALLY RESPONSIBLE FOR HAVING INFRINGED PLAINTIFFS' MARKS.

We note, merely to cover the issue lest it be raised, that the corporate representative who authorized and approved acts of unfair competition are liable under §43(a) of the Lanham Act and a corporate officer who knowingly and substantially participates in corporation's act of infringement is personally liable. *Electronic Laboratory Supply Co. v. Cullen*, 977 F.2d 798, 807-808 (3d Cir. 1992); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978). Here, Defendants, including Mr. Bufano, were served with a cease-and-desist notice advising Defendants that their intent to continue to use the "AMG" mark, or colorable imitations thereof, were likely to cause confusion. (See Exhibit "A" to Michael Gattoni Certification). That was followed up with a telephone conference with Defendants' counsel which it was in turn confirmed that they would not cease and desist. (*Id*. ¶2,3). Mr. Bufano and the other Defendants, when put on notice assuming arguendo they did not know what they were doing, have continued and are now willful infringers.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant a Preliminary Injunction enjoining Defendants from infringing Plaintiffs' Marks.


Respectfully submitted,

THE MCHATTIE LAW FIRM, LLC
*Attorneys for Plaintiffs*

By: /s/ *Christopher J. McHattie*
      Christopher J. McHattie, Esq.

Dated:  September 22, 2022

31